163 N.J. Super. 87 (1978)
394 A.2d 174
CLINTON GRIGGS, AN INFANT BY HIS GUARDIAN AD LITEM, SUMNER GRIGGS AND SUMNER GRIGGS, INDIVIDUALLY, PLAINTIFFS,
v.
WILLIAM BERTRAM, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
THE FRANKLIN MUTUAL INSURANCE CO., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Middlesex County Court, Law Division.
October 5, 1978.
*89 Mr. Edward K. Zuckerman for defendant and third-party plaintiff (Messrs. Rosenhouse, Cutler & Zuckerman, attorneys).
Mr. Bernard F. Boglioli for third-party defendant (Messrs. Boglioli, Stamelman & Stein, attorneys).
HAMLIN, J.D.C. (temporarily assigned).
This is a motion for involuntary dismissal pursuant to R. 4:37-2(b) made at the close of third-party plaintiff's case on liability. The motion requires that the court review briefly the current state of the law involving suits between policyholders and "breaching" insurance carriers so as to rule on a specific point of first impression regarding the effect of an independent settlement between an original claimant and the policyholder in the face of a disclaimer by the insurance company. The case between the third-party litigants was tried to the court without a jury.
*90 In this matter the third-party plaintiff Bertram was originally sued in tort by an infant through his guardian ad litem, Griggs. Thereafter Bertram filed this third-party action against Franklin Mutual Insurance Company (Franklin), following its disclaimer of coverage under a standard homeowners' policy. When the matter was called for trial Griggs settled with Bertram in the form of an agreement conceding liability by Bertram for the claimed injury and assessing fair settlement value in the sum of $9,000. Pursuant to this settlement the judge then sitting in this matter entered an order for judgment in favor of the infant plaintiff, Griggs, in the stated amount. In view of Bertram's lack of assets, the settlement agreement provided that Griggs would not pursue Bertram personally in return for Bertram's agreement to pursue his remedy against Franklin on Griggs' behalf and pay over to him the amount of settlement recovered. This third-party action revolves around Bertram's claim for $9,000 he is obligated to pay to Griggs and for reasonable attorney's fees and expenses based upon Franklin's alleged untimely and therefore wrongful disclaimer of the duty to defend. This motion was made at the conclusion of Bertram's presentation testing that claim. In ruling on the motion the court makes the following procedural and factual findings based upon stipulations of counsel, evidence adduced and pleadings filed.
Prior to and as of May 4, 1975 Bertram, then an infant, was a person included in coverage pursuant to a homeowners' policy issued by Franklin. The policy required Franklin to defend and pay certain damages incurred by the policyholder. The policy contained two provisions which are at issue here. The first is the standard intentional tort exclusion.[1] The second is a provision which prohibits recovery unless there is *91 settlement entered into with participation by Franklin, or judgment following actual trial.[2]
On May 4, 1974 Bertram and Griggs attended a basketball game held by the Monroe Township school system. While outside the school building Griggs and Bertram exchanged more words than good sense. Youthful energy matched in equal amount by rashness prevailed, and in the following fight Bertram hit Griggs, knocking him to the ground and then hit him again. Timely notice was given to Franklin of the possible claim. Bertram was interviewed by Franklin's investigator during August 1974. During that interview Franklin's investigator secured from Bertram (then 16 years of age) an admission that his striking was intentional. At the conclusion of the interview there was no indication of an intention to disclaim. No other witnesses were interviewed or sought. Physical examination of the claimant was not sought or secured.
Subsequently Bertram received a claim and representation letter from Griggs' attorney which was forwarded in timely fashion to Franklin and received by it on December 4, 1974. Franklin undertook no investigative action. Indeed, Franklin did nothing after securing the admission that the tort was intentional. Franklin made no indication to Bertram of any intention to disclaim coverage. Shortly before the statute of limitations ran a complaint was filed by Griggs on January 16, 1976 seeking damages from Bertram, the Monroe Township Board of Education and Monroe Township. The latter two defendants were dismissed from the action on motion for summary judgment.
*92 The Griggs complaint, as it pertained to Bertram, alleged injuries arising out of a "dispute" between the original parties. Although no specific allegation of intentional tort was made against Bertram, a fair reading of the complaint and inclusion by reference of an allegation of assault and battery placed that issue in the cause, as well as the claim in negligence. Bertram forwarded the summons and complaint to Franklin in timely fashion. On February 23, 1976 Franklin, for the first time, disclaimed by reason of the intentional tort exclusion and advised the hiring of counsel. Bertram thereafter filed an answer and a third-party complaint against Franklin in four counts. Bertram in this trial proceeds only on the third count, positing his claim solely on Franklin's delay in advising him of its intention to disclaim, thus prejudicing him in defending on the Griggs cause of action.
At the original trial call Griggs and Bertram, in the absence of Franklin, entered into a settlement agreement previously referred to. Pursuant to that agreement a consent order for judgment was signed by the judge who presided over the settlement negotiations, approving the settlement in favor of the infant plaintiff Griggs in the sum of $9,000. Thereafter the outstanding third-party action was assigned to the present court for resolution, resulting in this trial and the instant motion.
Bertram contends that Franklin's delay in advising him of its intention to disclaim for 18 months subsequent to its "investigation" estops Franklin from asserting any defense under the terms of the policy of insurance. Bertram specifically abandons any claim of coverage and concedes that the disclaimer by Franklin on the intentional tort exclusion, if made promptly or given in timely fashion, would have been valid. Franklin asserts that its disclaimer has not been shown by Bertram to be untimely or prejudicial on the evidence and, alternatively; that even if the disclaimer is not viable it may rely on the policy provision barring liability unless there was a settlement with company participation *93 or a judgment following actual trial. Bertram concedes the proffered settlement/judgment would not fulfill the policy condition but contends Franklin is estopped not only from denying coverage generally, but from relying on any terms of the policy. Lastly, Franklin contends that even if plaintiff's proofs are sufficient to defeat its motion on the issue referred to, independent of policy provisions, affirmative evidence must be adduced by Bertram as to the fairness and reasonableness of the settlement amount agreed to by Griggs and Bertram.
The law regarding disclaiming insurance carriers and their liability therefor is not in itself novel. See, generally, Annotation, "Liability of Insurer on Refusal to Defend," 49 A.L.R.2d 694; 7A Appleman, Insurance Law and Practice, § 4687. It is well settled that an insurance carrier is not a favored party in litigation with its policyholders. Our courts have consistently held that as between a carrier and a policyholder all ambiguities are to be resolved in favor of the insured. Bryan v. Employers Surplus Lines Ins., 60 N.J. 375 (1972). Similarly, exclusionary clauses are to be resolved under the same principle. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567 (1970).
Do the facts here make out a sufficient case to withstand a motion at the close of plaintiff's case, given the standard to be applied? See Dolson v. Anastasia, 55 N.J. 2 (1969).
Generally, an insurance carrier is under a duty upon notice of a possible claim to act diligently on behalf of its insured to investigate the facts of that claim, and if that investigation discloses a basis for the carrier to disclaim liability, it must notify its insured promptly. Failure to do so will estop the carrier from asserting the exclusion of coverage and permit the insured to recover from the carrier any damages along with costs and counsel fees. Merchants Indem. Corp. v. Eggleston, 37 N.J. 114 (1962).
Given the 18-month lapse between the "investigation" by Franklin and its disclaimer, with no indication or reservation in the interim that there was any reason for the *94 insured to take steps to protect his interest, the facts make out a sufficient case to withstand involuntary dismissal. See Dolson v. Anastasia, supra. The following cases are instructive on the point: Hanover Ins. Group v. Cameron, 122 N.J. Super. 51 (Ch. Div. 1973) (a letter of reservation four months following notice of possible claim, but no disclaimer for another 16 months); Sneed v. Concord Ins. Co., 98 N.J. Super. 306 (App. Div. 1967) (a letter of reservation three months following notice of possible claim, but no disclaimer for another 20 months); Ebert v. Balter (Allstate Ins. Co.), 83 N.J. Super. 545 (Cty. Ct. 1964) (23 months between notice of possible claim and disclaimer); Merchants v. Eggleston, supra (nine months between an undertaking of the defense and disclaimer).
Assuming, then, that there exists a significant enough delay in disclaiming to give rise to the equitable doctrine of estoppel, must Bertram here show specific affirmative proof of actual prejudice? While it is true that a requirement of prejudice was enunciated in Merchants v. Eggleston, supra, it is clear that subsequent case law adopts the principle that by virtue of the equitable nature of estoppel, actual prejudice is presumed and need not be proven by the insured. Hanover Ins. Group v. Cameron and Sneed v. Concord Ins. Co., both supra. Thus, Bertram need not prove actual prejudice on its case in chief to defeat this motion.
Franklin argues that assuming the foregoing, its acts were mandated by and in conformity with the standards set forth in Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970), and it therefore is relieved of liability. Essentially, it is Franklin's position that since Burd prohibits a carrier from controlling the defense in a suit which sounds alternatively both in negligence and intentional tort, it was compelled to disclaim upon receipt of a complaint alleging an intentional tort. While such statement is accurate to that limited extent, it does not address the alleged breach of duty here: the failure to advise the insured in timely fashion so he could undertake necessary investigation and preparation *95 in order to protect his interest. It certainly does not explain why the disclaimer, based upon an "investigation" completed 18 months before, was never communicated to the insured until the filing of the suit. Apart from the fact that such argument does not logically address the instant issue, Burd can in no way be read to permit a carrier to "sit" on a disclaimer simply because it is one that may arise under an intentional tort exclusion.
Must Bertram's claim be defeated because the settlement was not reached after "actual trial" or wherein there was Franklin's "participation"? The answer clearly is in the negative. By reason of its equitable nature, estoppel does not permit the carrier to avail itself of any of the terms of its contract of insurance which it has breached to defeat the interest of the insured. Firemans Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63 (1976); N.J. Mfrs. Ind. Ins. Co. v. U.S. Cas. Co., 91 N.J. Super. 404 (App. Div. 1966).
Lastly, what is the legal effect of the settlement reached here between the infant plaintiff Griggs and Bertram? This is the point not heretofore addressed by our case law. Previous cases have held that while a carrier may be liable for a settlement reached by its insured with a claimant, it was entitled to question the fairness of such settlement. Burd v. Sussex Mut. Ins. Co.; Firemans Fund Ins. Co. v. Security Ins. Co., etc., and N.J. Mfrs. Ind. Ins. Co. v. U.S. Cas. Co., all supra. That proposition in the context of the instant case poses very specific questions. Who has the burden of proof as to reasonableness and fairness of a settlement not participated in by an insurer? How is the burden of proof sustained? What are the rights of inquiry accorded to an insurance carrier?
The long-standing judicial policy of the courts favors settlement. Honeywell v. Bubb, 130 N.J. Super. 130 (App. Div. 1974). Judicial and public policy also favor policyholders in disputes with insurance carriers by reason of their unequal *96 bargaining positions. Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961).
If the policyholder is required, as suggested by Franklin, to affirmatively prove the reasonableness of his settlement both as to liability and damages, it would, for all intents and purposes, negate the policy enunciated by our courts of permitting a policyholder to settle his claim and seek reimbursement from his insurance company. This conclusion is inescapable when one realizes that were it otherwise, a policyholder could at best only settle with a hope that some court at some other time might approve that evaluation of the case and that, in any event, the main claim would have to be subsequently tried fully to a court in the guise of determining reasonableness. To impose such a burden on the policyholder would discourage settlement so necessary to the orderly disposition of cases.
First, an offer to settle based on a subsequent contingency is not likely to encourage the desirable goal of settlement of disputes. Secondly, a claimant is not likely to avoid trial by settlement if in fact he must try his claim in the subsequent third-party action. Lastly, if the policyholder is to try the main claim in an affirmative manner, there is no purpose to fostering settlement. Settlement under such conditions would at best be problematical and subject to later "ratification."
In the instant matter there is a settlement of $9,000 entered into by the parties on behalf of an infant plaintiff and formalized by an order of judgment signed by the court. In the absence of fraud on the face of the agreement, giving weight to the judgment entered by the court and the policy considerations expressed, it is deemed that in the case at hand Bertram has the duty of going forward with the proof of settlement and, having done so, that settlement and order of judgment creates a rebuttable presumption of reasonableness and fairness.
Of course, defendant Franklin here has the right to inquire into the fairness and reasonableness of such settlement. Indeed, *97 that very wording further evinces a policy to place the burden of proving fraud or unreasonableness on an insurance company under these circumstances. The burden of proof of demonstrating the unreasonable nature of the settlement by the preponderance of the evidence which is placed upon Franklin is similar to that placed upon a carrier when an insurance company seeks an adjudication of noncoverage of the insured through declaratory judgment. See Hanover Ins. Group v. Cameron, supra, 122 N.J. Super. at 56.
Thus, as to the amount of settlement entered into in favor of the original plaintiff Griggs, the motion of Franklin for involuntary dismissal must be denied. As to the issue of attorney's fees and costs, they are provable in ordinary course and subject to the same rules of evidence as any other claims for damages not protected by the special consideration outlined here regarding settlement of the principle claim.
NOTES
[1] "This policy does not apply: 1. Under Coverage E  Personal Liability and Coverage F  Medical Payments to Others: * * * f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."
[2] "Suit Against this Company: a. No suit or action shall lie against this Company, unless: (1) as a condition precedent thereto there has been full compliance with all of the provisions and stipulations of this policy, and (2) the amount of the Insured's obligation to pay has been finally determined: (a) by judgment against the Insured after actual trial; or (b) by written agreement of the Insured, the claimant and this Company."