58 P.3d 276 (2002)
147 Wash.2d 751
TRUCK INSURANCE EXCHANGE, Petitioner,
v.
VANPORT HOMES, INC., Robert Bogle, Dwane D. Bogle, Ellen Bogle, George Allison, Steve Burgen, Linda Burgen, Jeffery J. Fandell, Frances Fandell, Charles Gutweinger, Lee Gutweinger, Otto Allison, and Michelle Allison, Respondents.
No. 70747-2.
Supreme Court of Washington, En Banc.
Argued November 8, 2001.
Decided November 21, 2002.
*279 Burgess Fitzer P.S., Timothy Gosselin, Tacoma, for Petitioner.
Morse & Bratt, William Robison, Ben Shafton, Landerholm Memovich Lansverk & Whitesides, Zachary H. Stoumbos, Jean M. McCoy, Stoel Rives Boley Jones & Grey, Louis Ferreira, Donald Courser, Vancouver, for Respondents.
Bryan Harnetiaux, Spokane, Debra Stephens, Amicus Curiae on Behalf of Washington State Trial Lawyers Association Foundation. *277
*278 CHAMBERS, J.
We are asked to determine whether policy provisions relieve an insurer of the duty of providing coverage. However, because Truck Insurance Exchange breached its duty to defend in bad faith, we hold that it is estopped from denying coverage. The insurer further argues that in order to establish damages the insured must prove that its settlements with claimants were reasonable. We hold that where an insurer acts in bad faith in refusing to defend, the settlements entered into by insureds with third parties and approved by a court as reasonable will be presumed to be reasonable; such presumption may be overcome by the insurer upon a showing that the settlements were the product of fraud or collusion. The trial court's judgment is affirmed as indicated and the Court of Appeals is reversed to the extent it remanded for further findings regarding the reasonableness of the insured's settlement with the claimants.

FACTS
VanPort Homes, Inc., provided services in connection with the construction of new homes, and it offered two alternative contracts to its customers. It could act either as a general contractor or as a construction consultant to future homeowners wishing to build their own homes. All claims relevant to this appeal arose out of contracts to consult.
VanPort's boilerplate consultation contract provided that, with the exception of minor matters, the customer would "have complete and full authority as to the construction of [the] residence." Clerk's Papers (CP) at 428. The customer's responsibility included the selection of real estate, building plans, and design professionals. VanPort's services included assisting with schedules, budgets, and compliance with government requirements, and were "limited to the advice and materials it provide[d] to client." CP at 428-30.
When Truck Insurance first insured VanPort in 1987, it requested and received a report from Equifax regarding the nature of VanPort's business. The report stated that the company would be "operating as building consultants to prospective clients who come to them and want to have a house built by themselves" and that they would be "strictly a consulting firm." The report outlined VanPort's role essentially as it was laid out in VanPort's contracts with customers. CP at 372-73.
In 1987, after receiving the report from Equifax, Truck Insurance issued a "T-410" policy. From May 1991, coverage was provided by a commercial general liability (CGL) policy. Both policies provided coverage to VanPort as "engineers or architects, consulting, not engaged in actual construction."[1] CP at 484, 524. Thus, the policies acknowledged the fact that VanPort was not functioning as a general contractor but classified the company role as engineers and architects.[2] Both policies imposed on Truck Insurance the duty to defend.[3]
*280 Between 1989 and 1991, VanPort entered into construction consulting agreements with five sets of customers (collectively "customers"). The customers complained of numerous incidents of defective labor and materials, which VanPort failed to catch in its inspections, and notified VanPort of the failure of several subcontractors to properly perform work.
Dissatisfied with VanPort's response, the customers sued VanPort in four separate lawsuits for violations of the Washington State Consumer Protection Act, chapter 19.86 RCW, the federal Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r, misrepresentation, usury, breach of contract, and negligence. CP at 105. Only the negligence claim is relevant to this appeal. The customers alleged undetected errors in constructing foundations, framing, window installation, electrical work, and flooring. In one house, rafters were not tied to the roof. In another, a customer listed 56 defects, including severe cracks in the foundation, major leaks in the basement and through the roof, and omission of structural supports for the stairs and for certain load-bearing walls, all of which allegedly rendered the house valueless. Between July and October 1992, VanPort tendered the lawsuits to Truck Insurance.
Over a year later, in December 1993, Truck Insurance responded and declined coverage. The letter denying coverage quoted extensively from the policy language and endorsements but provided no analysis, and no attempt was made to explain how the policy language actually excluded the claim. The letter also stated that after a "thorough investigation" the insurer determined there was no coverage. CP at 553. However, an internal memo dated November 1993 indicates that little or no investigation was actually made:
At this time, it is difficult to assess any negligence that may be attributable to our insured due to the fact that we have not accepted the tender of defense, and therefore, have not [begun] to investigate all the liability issues with [regard] to this loss.
CP at 335.
In April 1994, VanPort wrote to Truck Insurance seeking an explanation for the denial of coverage. The letter stated that VanPort feared the costs of litigation would "be responsible for putting what was otherwise a very profitable and successful corporation out of business." CP at 560. VanPort also requested a meeting to discuss the denial. Truck Insurance never responded. Meanwhile, VanPort continued to defend the actions on its own.
In February 1996, Truck Insurance finally acted by filing a declaratory judgment action against VanPort, its owners, and the customers, seeking a declaration that it had no duty to defend or indemnify. Truck Insurance set out for the first time the basis of its denial of coverage as part of the declaratory judgment action, asserting that the claims were basically malpractice claims and that a CGL policy is not a malpractice policy. The action was stayed while the principal owners of VanPort completed bankruptcy proceedings and was resumed in July 1996. In November 1996, VanPort counterclaimed asserting estoppel, breach of contract, and bad faith, and sought damages to include the costs of defending against the suit brought by the customers. In February 1997, both parties moved for summary judgment.
In March 1997, VanPort and its customers settled their lawsuits for a total of $489,685.93. The customers agreed that they would collect only from VanPort's insurer and not from VanPort itself. VanPort assigned its right to indemnification from Truck Insurance to the customers and assigned to them a percentage of any damages awarded in VanPort's counterclaim.
In the Truck Insurance declaratory judgment action, VanPort brought a cross motion for summary judgment alleging that Truck Insurance had breached its duty to defend in violation of WAC 284-30-330(2), (6), (7) and (12).[4] The trial court after argument entered *281 an order holding that there was coverage, that Truck Insurance had a duty to defend, and later that Truck Insurance acted in bad faith in failing to defend. This was contested by Truck Insurance in two motions for reconsideration, both of which were denied.
In September 1998, the trial court entered an order of final judgment on some of the claims. The court held that Truck Insurance's wrongful refusal to defend VanPort was an unfair or deceptive practice in violation of consumer protection regulation WAC 284-30-330, and the damages were therefore per se reasonable. Accordingly, the court declined to evaluate further the reasonableness of the settlements. The court awarded a total judgment of $689,741.46, with interest accruing at the rate of 12 percent per annum. The court stayed the claims for lack of good faith and other Consumer Protection Act violations.
Truck Insurance filed an appeal. In an unpublished opinion, the Court of Appeals affirmed the decision that Truck Insurance owed coverage and had a duty to defend VanPort, but remanded for further proceedings concerning the amount of the judgment, declining to find that the damages were per se reasonable. Truck Ins. Exch. v. Vanport Homes, Inc., noted at 99 Wash.App. 1051, 2000 WL 239592. We granted review.

ANALYSIS

Duty to Defend
It is unnecessary for us to reach the issue of whether or not coverage was excluded under specific policy provisions because we hold that an insurer that refuses or fails to defend in bad faith is estopped from denying coverage. It is well established that where an insurer has a duty to defend an action and the insurer refuses to defend, the insurer is bound by the decision of the trier of fact regarding issues necessarily decided in the litigation. Herendeen v. United States Fid. & Guar. Co., 19 Ariz.App. 399, 401, 507 P.2d 1011 (1973); Blais v. Quincy Mut. Fire Ins. Co., 361 Mass. 68, 70-71, 278 N.E.2d 746 (1972); Senger v. Minn. Lawyers Mut. Ins. Co., 415 N.W.2d 364, 368 (Minn.Ct. App.1987); Ramos v. Nat'l Cas. Co., 642 N.Y.S.2d 290, 227 A.D.2d 250 (1996); accord B. Roth Tool Co. v. New Amsterdam Cas. Co., 161 F. 709, 712 (8th Cir.1908); U.S. Fid. & Guar. Co. v. Dawson Produce Co., 180 Okla. 119, 121, 68 P.2d 105 (1937); Carolina Veneer & Lumber Co. v. Am. Mut. Liab. Ins. Co., 202 S.C. 103, 107, 24 S.E.2d 153 (1943); S.W. Sur. Ins. Co. v. Thompson, 180 S.W. 947, 951 (Tex.Civ.App.1915).
An insurer's duty to defend is broader than its duty to indemnify. Hayden v. Mut. of Enumclaw Ins. Co., 141 Wash.2d 55, 64, 1 P.3d 1167 (2000). The duty is one of the main benefits of the insurance contract. Safeco Ins. Co. v. Butler, 118 Wash.2d 383, 392, 823 P.2d 499 (1992). The duty to defend arises at the time an action is first brought, and is based on the potential for liability.[5]See Holland Am. Ins. Co. v. Nat'l Indem. Co., 75 Wash.2d 909, 911-12, 454 P.2d 383 (1969). The duty to defend "arises when a complaint against the insured, construed liberally, *282 alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 425, 983 P.2d 1155 (1999). Only if the alleged claim is clearly not covered by the policy is the insurer relieved of its duty to defend. Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 561, 951 P.2d 1124 (1998) (citing State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 687 P.2d 1139 (1984)). If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend. R.A. Hanson Co. v. Aetna Ins. Co., 26 Wash.App. 290, 295, 612 P.2d 456 (1980).
Truck Insurance denied coverage claiming that after an investigation it had determined that no coverage existed. There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured. If coverage is not clear from the face of the complaint but may exist, the insurer must investigate the claim and give the insured the benefit of the doubt in determining whether the insurer has an obligation to defend. See Ins. Co. of N. Am. v. Ins. Co. of Pa., 17 Wash.App. 331, 334, 562 P.2d 1004 (1977). Similarly, facts outside the complaint may be considered if "`(a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate.' " Atl. Mut. Ins. Co. v. Roffe, Inc., 73 Wash.App. 858, 862, 872 P.2d 536 (1994) (quoting E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wash.2d 901, 908, 726 P.2d 439 (1986)). An insurer has an obligation to give the rights of the insured the same consideration that it gives to its own monetary interests. See Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 388, 715 P.2d 1133 (1986). Put simply, an insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend where, as here, the complaint can be interpreted as triggering the duty to defend. If in doubt, it may file a declaratory action.
Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination. Kirk, 134 Wash.2d at 563, 951 P.2d 1124. If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 93-94, 776 P.2d 123 (1989). A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel. "When that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay." Kirk, 134 Wash.2d at 563 n. 3, 951 P.2d 1124
We will briefly review Truck Insurance's policy contentions in the context of its duty to defend. Truck Insurance argues that its CGL policy coverage is not a performance bond, and there is no coverage for VanPort's failure to perform its contractual obligation. Truck Insurance relies on Hayden, 141 Wash.2d at 64, 1 P.3d 1167, to support this contention; however, the citation is not well taken. In section 1A of its policy, Truck Insurance agreed to pay all sums the insured becomes obligated to pay because of property damage resulting from an occurrence within the policy period. CP at 526. In Hayden, we specifically considered a policy exclusion for loss of use of tangible property, instead of a general grant of coverage. Hayden, 141 Wash.2d at 66, 1 P.3d 1167. Hayden may be helpful in analyzing a similar exclusion within a similar policy, but certainly does not limit the coverage that an insurer may agree to provide to an insured. Further, Truck Insurance contends that its policy does not apply to breaches of contract; however, customers alleged claims that sound both in contract and in tort. The customers' complaints specifically set forth facts which, if proved, would trigger coverage.
Truck Insurance also contends that even if the complaint triggered broad coverage provisions in the policy, policy exclusions apply. First Truck Insurance argues its impaired property exclusion applies. We find it unnecessary to fully analyze the impaired *283 property exclusion and merely note that it excluded damages for loss of use. Under Hayden, the exclusion may apply to claimed damages that do not result in physical damage. However, reading the complaint on its face, damage to the customers' property could be physical and thus the impaired property exclusion would not apply. In short, the applicability of this exclusion requires looking beyond the complaint and examining the acts which Truck Insurance could have done under a reservation of rights defense and timely declaratory judgment action but did not do.
Second, Truck Insurance argues that its operation exclusion applies, excluding coverage for:
j. "Property damage" to:
....
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.
CP at 528. Truck Insurance contends that VanPort's supervisory role in the building of the homes constituted an "operation" within the meaning of the exclusion, while the customers assert that it was not an operation. The policy neglects to define "operation."
If, as the customers allege, the property damage was caused by the work of others and VanPort's role was to inspect, then it would appear that the exclusion would not apply. Once again, the applicability of the exclusion depends on a factual determination of VanPort's role or operation and requires an examination of facts beyond the complaint. In short, we conclude that Truck Insurance's indemnity policy may not have applied to some or all of the claims had they been fleshed out by investigation under a reservation of right. However, the claims stated in the complaints were sufficient to impose a duty to defend.

Bad Faith
We concur with the trial court that Truck Insurance breached its duty to defend when it denied coverage without explanation, and this breach was in bad faith. The trial court ruled in its memorandum of opinion dated October 9, 1997[6] that the denial of coverage and failure to defend were in bad faith. Truck Insurance twice sought reconsideration; both times it was denied.[7] Between July and October 1992, VanPort tendered defense of the lawsuits to Truck Insurance. More than a year later, in November 1993, Farmers Group, acting on behalf of Truck Insurance, addressed the customers' allegations in an internal memorandum recommending denial of coverage and citing various policy exclusions to justify the denial. The internal memorandum indicates that little or no investigation had been done. On December 7, 1993, Truck Insurance sent a letter to VanPort denying both insurance coverage and its duty to defend, based on a laundry list of exclusions without any analysis or correlation to the particular claims. VanPort's attorneys requested a more detailed explanation of the denial, seeking a clarification of relevant facts or applicable law. Truck Insurance never responded to the request and, instead, nearly four years after the first tender, instituted a declaratory judgment action against VanPort, its principals, and the customers, seeking a judicial declaration that the policy did not provide coverage.
The trial court agreed with VanPort that Truck Insurance had violated Washington's Consumer Protection Act. One of the regulations promulgated to enforce the act requires an insurer to promptly provide a reasonable explanation for the denial of a claim. WAC 284-30-330(13). Violations of *284 WAC 284-30-330 are per se violations of Washington's Consumer Protection Act. Leingang v. Pierce County Med. Bureau, Inc., 131 Wash.2d 133, 151, 930 P.2d 288 (1997). Finally, the trial court ruled that the denial was in bad faith and awarded attorney fees. Based on the violation of the Consumer Protection Act, WAC 284-30-330(13), and Truck Insurance's unconscionable delay in responding to its insured, we affirm the finding of bad faith.

REMEDY
Truck Insurance argues that the trial court improperly imposed the customers' settlements on Truck Insurance. In Besel v. Viking Ins. Co. of Wis., 146 Wash.2d 730, 49 P.3d 887 (2002), we dealt with a related issue. There, an insurer that had issued a $25,000 liability policy refused in bad faith to settle the claim. The insurer failed to respond to numerous attempts by the claimant to settle. Finally, the insured settled his own claim for $175,000 with a covenant that the claimant would not execute against the insured. Instead, the claimant sued the insurance company as the assignee of the insured. The settlement was contingent on finding by the trial court that the settlement was reasonable. The Besel trial court, applying the criteria established in Chaussee v. Maryland Casualty Co., 60 Wash.App. 504, 512, 803 P.2d 1339 (1991), found the settlement to be reasonable. We concluded that once a court determined the covenant judgment to be reasonable, it was presumptively reasonable and the burden shifted to the insurer to show that the settlement was the result of fraud or collusion. Besel, 146 Wash.2d at 738-39, 49 P.3d 887; Chaussee, 60 Wash.App. at 512; 803 P.2d 1339 14 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 203:41 (3d ed.1999); see also Utah Power & Light Co. v. Fed. Ins. Co., 711 F.Supp. 1544 (D.Utah 1989), aff'd, 983 F.2d 1549 (10th Cir.1993). To place the burden of proving reasonableness of a settlement on a policyholder "`would discourage settlement so necessary to the orderly disposition of cases.'" Griggs v. Bertram, 88 N.J. 347, 365, 443 A.2d 163 (1982) (quoting Griggs v. Bertram, 163 N.J.Super. 87, 96, 394 A.2d 174 (1978)).
Whether the insurer acts in bad faith by refusing to settle in good faith or by refusing to defend, the consequences to the insured are the same. The defense may be of greater benefit to the insured than the indemnity. The defense must be prompt and timely. An insurer refusing to defend exposes its insured to business failure and bankruptcy. An insurer faced with claims exceeding its policy limits should not be permitted to do nothing in the hope that the insured will go out of business and the claims simply go away. To limit an insurer's liability to its indemnity limits would only reward the insurer for failing to act in good faith toward its insured. We therefore hold that when an insurer wrongfully refuses to defend, it has voluntarily forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion. See Utah Power & Light Co., 711 F.Supp. at 1556. To hold otherwise would provide an incentive to an insurer to breach its policy. We may affirm the trial court on any grounds established by the pleadings and supported by the record. See Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 344, 883 P.2d 1383 (1994). Since we decide this matter on alternative grounds, we do not reach the remaining issues raised by the parties.
We reverse the Court of Appeals and remand this case to the trial court with directions to enter judgment against Truck Insurance. The trial court may proceed to hear, consistent with this opinion, any claims previously stayed.
WE CONCUR: JOHNSON, SANDERS, IRELAND, OWENS, JJ.
BRIDGE, J., dissenting.
This court has been asked to determine whether Truck Insurance Exchange (TIE) had a duty to defend and/or indemnify VanPort Homes, Inc. (VanPort) for claims filed against VanPort by its customers. TIE states in bold print in its petition for review, which we accepted, that it "seeks review of only that part of the Court of Appeals decision finding coverage." Pet. for Review *285 by Appellant Truck Ins. Exch. at 5. Yet, the majority avoids this critical issue. Thus, although ultimately I agree with the majority that as an insurer TIE possessed a general duty to defend VanPort and that this duty is broader than an insurer's duty to indemnify its insured, I conclude that because TIE possessed a reasonable basis for denying coverage, it did not act in bad faith.

I

Commercial General Liability Policy Coverage
The Court of Appeals evaluated the applicability of the commercial general liability (CGL) policy exclusions, TIE's duty to defend VanPort against its customers' claims, and the reasonableness of the customers' settlements. Truck Ins. Exch. v. VanPort Homes, Inc., noted at 99 Wash.App. 1051, 2000 WL 239592. Although TIE has contended throughout the proceedings that the CGL policy does not cover the customers' claims against VanPort, the Court of Appeals failed to directly address this issue. See Am. Opening Br. of Appellant Truck Ins. Exch. at 2. Ultimately the Court of Appeals, in an unpublished decision, affirmed the trial court's grant of summary judgment in favor of VanPort and its customers, but remanded the case for evaluation of the settlements in light of several "reasonableness" factors enunciated in Glover v. Tacoma General Hospital, 98 Wash.2d 708, 658 P.2d 1230 (1983), and Chaussee v. Maryland Casualty Co., 60 Wash.App. 504, 803 P.2d 1339 (1991). Truck Ins. Exch., 99 Wash.App. 1051, 2000 WL 239592, at *6. TIE petitioned for review in this court. We granted review and then remanded the case to the Court of Appeals for reconsideration in light of Hayden v. Mutual of Enumclaw Insurance Co., 141 Wash.2d 55, 1 P.3d 1167 (2000).
On remand, the Court of Appeals distinguished Hayden on its facts and adhered to its original decision. The majority also distinguished Hayden, and in doing so limited its significance to a few sentences:
In section 1A of its policy, Truck Insurance agreed to pay all sums the insured becomes obligated to pay because of property damage resulting from an occurrence within the policy period. [Clerk's Papers] at 526. In Hayden, we specifically considered a policy exclusion for loss of use of tangible property, instead of a general grant of coverage. Hayden, 141 Wash.2d at 66, 1 P.3d 1167. Hayden may be helpful in analyzing a similar exclusion within a similar policy, but certainly does not limit the coverage that an insurer may agree to provide to an insured.
Majority at 282-283. I find neither the Court of Appeals nor the majority's cursory distinctions of Hayden persuasive.
TIE agreed to cover
those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.
Clerk's Papers (CP) at 526. Furthermore, the policy clarifies, "This insurance applies to `bodily injury' and `property damage' only if... [t]he `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory.'" Id. These provisions are consistent with the general policy that "[i]nsurers that issue general liability policies only provide coverage for damages arising out of an `occurrence.'" THOMAS V. HARRIS, WASHINGTON INSURANCE LAW 22-1 (1995 & Supp.1999-2001).
The language is also nearly identical to the proposed wording from the Insurance Services Office, Inc.'s 1973 Standard Provisions for Comprehensive General Liability Insurance.[1] Similarly, in Hayden, the insurance company, Mutual of Enumclaw, had granted *286 a comprehensive general liability policy indemnifying the insured for all damages that he became legally obligated to pay because of property damage caused by an occurrence to which the insurance applied. Hayden, 141 Wash.2d at 59, 1 P.3d 1167. Thus, for the majority to imply that TIE somehow agreed to cover more damages than the standard CGL policy, or than the policy in Hayden, is simply incorrect.
By limiting our holding in Hayden, the majority undermines the significant principle that applies to all CGL policies: a CGL policy is not intended to be "`a performance bond, product liability insurance, or malpractice insurance.'" Hayden, 141 Wash.2d at 64, 1 P.3d 1167 (quoting Aetna Cas. & Sur. Co. v. M & S Indus., Inc., 64 Wash.App. 916, 921, 827 P.2d 321 (1992)). "A general liability policy is not intended to encompass the risk of an insured's failure to adequately perform work...." Westman Indus. Co. v. Hartford Ins. Group, 51 Wash.App. 72, 80, 751 P.2d 1242 (1988). Rather, CGL policies are most often intended to cover unforeseeable accidents. Hayden, 141 Wash.2d at 59, 1 P.3d 1167. In fact, before "occurrence-based" policies were written, comprehensive general liability policies were "accident-based." HARRIS, supra, at 21-2. The standard form was revised in 1966 to an "occurrence-based" policy, but occurrence was then defined as "`"an accident, including injurious exposure to conditions ..." which resulted in a loss.'" Id. (quoting Queen City Farms, Inc. v. Cent. Nat'l Ins. Co., 126 Wash.2d 50, 76, 882 P.2d 703 (1994); 891 P.2d 718 (quoting CGL)). Consistent with this latest revision to the standard form policy, TIE's Commercial[2] General Liability Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CP at 536. These governing principles are applicable whether the court focuses on the exclusions to a given policy or the policy as a whole.
In Hayden, Hayden Farms had hired a self-proclaimed grafting expert, James Krause, to assist it with grafting scion wood. 141 Wash.2d at 57, 1 P.3d 1167. A series of mishaps led Hayden Farms to eventually fire Krause and hire a replacement to perform the grafting. Id. at 58, 1 P.3d 1167. First the grafting was postponed because the buds were damaged while in Krause's care. Id. When new scion wood was provided, Krause used the wrong kind of tape, and less than 10 percent of the grafts were successful. Id. The following spring, Krause again attempted to graft a new section of scion wood, but another postponement occurred because Krause improperly stored the wood. Id. Subsequently Hayden Farms sued Krause for breach of contract and negligence. Id. at 58-59, 1 P.3d 1167.
I conclude that Hayden is similar to the factual scenario presented, hence the same general principles recognized in Hayden should apply here. VanPort had contracted with various customers to complete consulting work in the construction of their respective homes. Pet. for Review by Appellant, Truck Ins. Exch. at 3. Construction defects occurred as a result of poor work by the subcontractors. Suppl. Br. of Pet'r Truck Ins. Exch. at 3-10. The customers subsequently claimed that VanPort failed in its duties and they suffered damages as a result. Id. For example, one of the customers claimed that one subcontractor had failed to properly fasten the roof deck and some of the windows were square instead of trapezoid. CP at 341, 345.
VanPort is one step removed from Krause. VanPort did not perform the work that caused the physical damage. The consulting contract states that VanPort's role was limited to the advice it provided and that the homeowners were building the homes:
[VanPort] is not a guarantor nor shall it have responsibility for any of the work performed by any subcontractors or materialmen retained by client, nor shall [VanPort] have any responsibility for the selection of said contractors or materialmen or for any contracts or agreements between client and said subcontractors or materialmen. [VanPort's] duties hereunder shall not result in any responsibility or guarantee *287 as to any work performed by said parties.
CP at 430-31. VanPort retained authority to give orders to the contractors concerning matters of only a minor nature. According to the contract, a matter is considered minor if "a decision or order regarding such manner [sic] does not substantially affect the design or value of the home." CP at 428. If we were to hold VanPort liable for the physical damage caused by the subcontractors hired by the customers, then VanPort's CGL policy would indeed be a performance bond, product liability insurance or malpractice insurance, contrary to our express language in Hayden. Not only did VanPort not cause the damage to the customers' homes because it was a result of faulty workmanship by a subcontractor, but VanPort did not have direct control over the subcontractors.
The conclusion that TIE had no duty to indemnify VanPort is bolstered by a factually similar case from Maryland, which we cited favorably in Hayden. See Reliance Ins. Co. v. Mogavero, 640 F.Supp. 84 (D.Md.1986). The Mogavero court reasoned that property damage does not include defective work performed by the insured, and, more importantly, that an "`occurrence' does not include the normal, expected consequences of poor workmanship." 640 F.Supp. at 86.
The VanPort customers attempt to distinguish Hayden and Mogavero by noting that in those cases the contractors themselves were sued and the insurance directly covered the contractors who performed the defective work. Resp'ts' Suppl. Br. at 11. As noted, this distinction only removes VanPort one step further from the liability. Considering that the policy would likely not cover the poor workmanship performed by the actual subcontractors, surely it would not apply to VanPort who is indirectly related to the faulty workmanship. Additionally, although Washington courts have not directly addressed the applicability of this "performance bond" rule for CGL policies covering construction contractors who provide advice, a recent decision in California suggests that the same exclusion may apply. See Ray v. Valley Forge Ins. Co., 77 Cal.App.4th 1039, 92 Cal.Rptr.2d 473 (1999). Adopting the reasoning from Mogavero and Ray and following the principles articulated in Hayden, therefore, the customers' claims against VanPort are not covered by TIE's commercial general liability policy.

II

Exclusions
The exclusions that TIE relied upon when it denied VanPort coverage reinforce the principle that "liability policies do not insure against the simple cost of poor performance." PETER J. KALIS, THOMAS M. KEITER, & JAMES R. SEGERDAHL, POLICYHOLDER'S GUIDE TO THE LAW OF INSURANCE COVERAGE 10-3 (1997 & Supp.2002).
"The consequence of not performing well is part of every business venture; the replacement and repair of faulty goods and works is a business expense, to be borne by the insured-contractor in order to satisfy customers.... There exists another form of risk in the insured-contractor's line of work, that is, injury to people and damage to property caused by faulty workmanship. Unlike business risks of the sort described above, where the tradesman commonly absorbs the cost attendant upon the repair of his faulty work, the accidental injury to property or persons substantially caused by his unworkmanlike performance exposes the contractor to almost limitless liabilities. While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting."
Id. at 10-3 through 10-4 (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788, 791 (1979)). Accordingly, consistent with the general applicability of CGL policies to accidents or "occurrences," many CGL policies contain "business risk exclusions." Id. at 10-4.

A. Operations Exclusion
TIE denied coverage in accordance with one such common business risk exclusion referred *288 to as an "operations exclusion." The operations exclusion relieves TIE from covering "that particular part of real property on which [VanPort] or any contractors or subcontractors working directly or indirectly on [VanPort's] behalf are performing operations, if the `property damage' arises out of those operations." CP at 528. The majority contends that a trial court would need to interpret what is meant by an operation and whether VanPort was performing an "operation" in its supervisory role. This added step is unnecessary when approached from the logical standpoint that the operations actually relate to the subcontractors and their construction of the customers' homes. This is evident from the customer claims for property damage that resulted from the subcontractors' faulty work. Although the subcontractors were working directly on behalf of the customers, they were working indirectly on VanPort's behalf as evidenced by the contract between VanPort and the customers. The clear language of this exclusion makes it evident that this case presents the type of business risk that the exclusions were intended to cover.

B. Impaired Property Exclusion
Another exclusion justifying TIE's denial of coverage is the impaired property exclusion, also a common provision in CGL policies implemented to limit business risk. KALIS, supra, at 10-20, 10-21. The impaired property exclusion in TIE's policy for VanPort applied to:
"Property damage" to "impaired property" or property that has not been physically injured, arising out of
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
CP at 528. The exclusion does not apply "to the loss of use of other property arising out of sudden and accidental physical injury to `your product' or `your work' after it has been put to its intended use." Id. The insurance policy defines "impaired property" as:
tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work;" or
b. Your fulfilling the terms of the contract or agreement.
CP at 535. The policy defines "your product" as:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and
b. The providing of or failure to provide warnings or instructions.
CP at 537. In turn, the policy defines "your work" as:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
Id. The policy indicates that "your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and
b. The providing of or failure to provide warnings or instructions.
Id.
This was the exclusion at issue in Hayden, where this court noted that "[t]he `loss of use' exclusion applies to claims arising out of the loss of use of tangible property, which has not been physically injured, resulting from either the insured's delayed performance of a contract, or an insured's faulty performance of that contract." 141 Wash.2d at 65-66, 1 P.3d 1167. In Hayden, this court held that the loss of use exclusion clearly and unambiguously *289 applied and supported a denial of the duty to defend where the gravamen of the complaint was the failure of the "grafts or grafting work to live up to the parties' expectations." Id. at 66, 1 P.3d 1167. Consistent with Hayden, the exclusion also applies here.
The customers in this case filed claims against VanPort alleging that it was negligent in performing its duties under the consulting agreement. Br. of Resp'ts Allison, et al. at 7. The customers "sought damages occasioned by the defective workmanship and defective materials that VanPort should have protected them against through adequate inspection and proper construction management." Id. Similar to the clause in the insurance policy at issue in Hayden, the exclusion in VanPort's policy applied to "[a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." CP at 528. Thus, whether this court examines the subcontractors' or VanPort's allegedly negligent work, this exclusion would apply. Either the subcontractors' work was faulty and it could be corrected by "[t]he repair, replacement, adjustment or removal" of the subcontractors' product or work or the complaint pertains to VanPort's contract and the exclusion covers "[a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." CP at 535, 528

C. Professional Services Exclusion
I would also conclude that the professional services exclusion exempts TIE from a duty to indemnify VanPort. TIE amended its policy to include an exclusion for supervisory or inspection services rendered by engineers, architects, or surveyors. CP at 538. The exclusion stated:
EXCLUSION  ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART.
This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:
1. The preparing, approving, or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; and
2. Supervisory, inspection, or engineering services.
Id.
TIE asserts that "[t]hroughout the history of the coverage, TIE had identified VanPort as an engineering company,[3] and therefore had argued that this exclusion applied to it."[4] Suppl. Br. of Pet'r Truck Ins. Exch. at 10. This exclusion appears straightforward and would exclude TIE from insurance coverage for VanPort's consulting services. Therefore, I would conclude that even were we to determine that the CGL policy overall coverage applied, this and the other exclusions would exempt TIE from providing coverage.

III

Bad Faith
On December 7, 1993, TIE sent a letter to VanPort denying both insurance coverage and its duty to defend based upon a list of policy exclusions, including those presented here. VanPort's attorneys requested a more detailed explanation of the denial, with a clarification of relevant facts or applicable law. In response, TIE instituted a declaratory judgment action against VanPort, its principals and the customers, seeking confirmation that it was not obligated to afford coverage. In response to this action, VanPort alleged bad faith for TIE's delayed reply and an alleged failure to investigate the customers' claims. The trial court agreed with VanPort's allegations.
On a subsequent motion for summary judgment, the trial court found that TIE acted in bad faith when it failed to defend *290 VanPort and awarded VanPort attorney fees.[5] TIE opposed the bad faith claim arguing that the denial letter established the applicable exclusions and unless its reliance on those terms was frivolous and unfounded, the court could not find bad faith. CP at 647-49. The trial court ignored both of these arguments, however, instead relating those issues to its Consumer Protection Act (chapter 19.86 RCW) claim. CP at 722, 746.
When breaching a duty to defend, an insurer acts in bad faith when it refuses to defend its insured and the refusal is "unreasonable, frivolous, or unfounded." Kirk v. Mt. Airy Ins. Co., 134 Wash.2d 558, 560, 951 P.2d 1124 (1998). "A denial of coverage based on a reasonable interpretation of the policy is not bad faith." Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists' Util. Sys., 111 Wash.2d 452, 470, 760 P.2d 337 (1988) (citing Castle & Cooke, Inc. v. Great Am. Ins. Co., 42 Wash.App. 508, 518, 711 P.2d 1108, review denied, 105 Wash.2d 1021 (1986)). Even if incorrect, the denial "does not violate the Consumer Protection Act if the insurer's conduct was reasonable." Transcontinental, 111 Wash.2d at 470, 760 P.2d 337 (citing Villella v. Pub. Employees Mut. Ins. Co., 106 Wash.2d 806, 821, 725 P.2d 957 (1986)).
Furthermore, an insurer's incorrect denial of coverage does not constitute an unfair trade practice, and hence a violation of the Washington Consumer Protection Act, if the insurer had a reasonable justification for denying coverage. See generally Keller v. Allstate Ins. Co., 81 Wash.App. 624, 634, 915 P.2d 1140 (1996). Considering that at least one of the exclusions applies, and CGL policy does not cover the type of claims presented, TIE possessed a reasonable justification for denying coverage and its duty to defend. Accordingly, TIE did not act in bad faith.
This court should find that TIE has no duty to indemnify VanPort and did not act in bad faith, but that it still had a duty to defend. Hayden, 141 Wash.2d at 64, 1 P.3d 1167 ("It is well settled that the duty to defend under a CGL policy is separate from, and broader than, the duty to indemnify."). Given this broad duty, I would agree with the majority that TIE possessed a duty to defend VanPort, but I disagree that TIE breached this duty in bad faith.
For these reasons, I dissent.
SMITH, J., ALEXANDER, C.J., MADSEN, J., concur.
NOTES
[1] The CGL policy listed VanPort as a contractor, but noted that the company did not engage in actual construction.
[2] Because the CGL policy provided broader coverage, it is not necessary to consider whether there was coverage under the T-410 policy. If there was no coverage under CGL, there was necessarily no coverage under T-410. Conversely, if there was coverage under CGL, it is not necessary to determine whether there was also coverage under T-410, because CGL would have provided the coverage.
[3] The policies provided "General Aggregate Limit (Other Than Products-Completed Operations)" of $300,000. CP at 524.
[4] WAC 284-30-330 Specific unfair claims settlement practices defined. The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims:

....
(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
....
(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. In particular, this includes an obligation to effectuate prompt payment of property damage claims to innocent third parties in clear liability situations....
(7) Compelling insureds to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.
....
(12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
[5] An insurer may be responsible for defense costs prior to tender. Griffin v. Allstate Ins. Co., 108 Wash.App. 133, 142, 29 P.3d 777; 36 P.3d 552 (2001). Once a claim against an insured is presented," the insured must affirmatively inform the insurer that its participation is desired." Unigard Ins. Co. v. Leven, 97 Wash.App. 417, 427, 983 P.2d 1155 (1999). Truck Insurance policies require the insured to notify the insurer as soon as practicable of an "occurrence" that may result in a claim or as soon as a "claim" is made. CP at 532 (CGL policy § IV 2(a), (b)).
[6] The trial judge's opinion finding bad faith was not designated for review. However, we may consider orders not designated in the notice if review is "demanded by the necessities of the case." RAP 2.4(a); See also Right-Price Recreation, L.L.C. v. Connells Prairie Cmty. Council, 146 Wash.2d 370, 378, 46 P.3d 789, 792 (2002).
[7] The final judgment and stipulation on less than all claims does not reference this determination, but does stay further litigation on the issue of the lack of good faith. CP at 741. Insofar as these issues remain, we do not reach them.
[1] We will pay those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or property damages to which this insurance applies. This insurance applies only to bodily injury and property damage which occurs during the policy period. The bodily injury or property damage must be caused by an occurrence. The occurrence must take place in the coverage territory.

HARRIS, supra, at 21-1.
[2] "Comprehensive" evolved to "Commercial." HARRIS, supra, at 21-2.
[3] CP at 220, 246.
[4] CP at 192.
[5] CP at 656, 721. The trial court's finding of bad faith results from a motion for summary judgment, hence we review the record de novo and can reach our own conclusions. Duckworth v. City of Bonney Lake, 91 Wash.2d 19, 21-22, 586 P.2d 860 (1978).