WESTERN HERITAGE INSURANCE COMPANY, Plaintiff,

v.

The ESTATE OF Michael Kent DEAN, Deceased, Joyce Dean, Sandra Stephens, as Next Friend of Brandi Dean, A Minor, Janette Dean, George L. Sandstrom d/b/a the Waterhole, and Sidney L. Ingles, III.

No. 9:97cv80.

United States District Court, E.D. Texas, Lufkin Division.

Feb. 4, 1998.

*MEMORANDUM OPINION
AND ORDER*

HANNAH, District Judge.

Pending before the Court is Plaintiff's Motion for Summary Judgment. Upon due consideration of said Motion and the Responses thereto, the Court is of the opinion that Plaintiff's Motion for Summary Judgment be DENIED.

## BACKGROUND

Plaintiff, Western Heritage Insurance Company, issued a liability insurance policy to George Sandstrom insuring his business known as The Waterhole. The deceased, Michael Kent Dean, was involved in a physical altercation at The Waterhole and subsequently died. Thereafter, the deceased's Estate and heirs brought suit against Sandstrom d/b/a The Waterhole. Specifically, the underlying complaint alleged

> [a]t approximately 11:00 a.m. on November 2, 1995, Decedent went to The Waterhole, a bar ... in Apple Springs, Trinity County, Texas. This retail business establishment was occupied and maintained by Defendant George L. Sandstrom.... Decedent spend several hours at The Waterhole and was served many alcoholic beverages. By 5 p.m., Decedent was notably intoxicated and presented a clear danger to himself and others. Despite Decedent's intoxicated condition, he was permitted to remain on the premises of The Waterhole, and in fact was served additional alcoholic beverages. By 10 p.m. that night, Decedent was extremely intoxicated. He became involved in an altercation and was severely beaten about the head and shoulders by another patron. Decedent collapsed to the floor. Instead of calling for medical attention, the employees of The Waterhole decided to let Decedent lay on the floor, ostensibly to "sleep off" the effects of his intoxication. Some fifty (50) minutes later, another patron entered the premises and discovered Decedent on the floor, and immediately requested that 911 be called. Paramedics arrived and found Decedent dead. An autopsy was performed, which indicated that Decedent died of massive head injuries. A toxicology examination revealed that Decedent's blood alcohol level was .26 and his urine alcohol level was .34 at the time of his death.

The causes of action plead by the Estate and heirs included negligence, gross negligence, negligence per se, violations of the Texas Deceptive Trade Practices Act, and violations of the Texas Dram Shop Statute.

Plaintiff filed this action seeking declaratory judgment that it does not owe a duty to defend or pay any judgment or settlement for the claims of the Estate and the Dean heirs in the underlying suit.

## SUMMARY JUDGMENT

When "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment should be granted. Fed.R.Civ.P. 56(c). Summary judgment is appropriate when the questions to be decided are issues of law. The interpretation of an insurance contract and its exclusions is a question of law. *See National Union Fire Ins. Co. v. Kasler Corp.,* 906 F.2d 196, 198 (5th Cir.1990). Texas has adopted the "eight corners rule," which provides that Texas courts "look only to the pleadings

and the insurance policy to determine whether the duty to defend exists." *Lafarge Corp. v. Hartford Casualty Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995); *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.-Dallas 1993, writ ref'd). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). We must liberally construe the allegations of the pleadings, and any doubt about coverage is resolved in favor of the insured. *Cullen/Frost*, 852 S.W.2d at 255. Policy exclusions are strictly construed against the insurer. *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976).

## DISCUSSION

Plaintiff argues it is entitled to summary judgment because the insurance policy at issue does not cover Sandstrom for the acts alleged in the underlying lawsuit. Specifically, the policy contains exclusions for coverage for "assault and battery" and "liquor liability." Further, Plaintiff contends there has been no "occurrence" as defined in the policy, and which is required to trigger coverage. In the alternative, Plaintiff urges that it has no duty to indemnify Sandstrom for any punitive or exemplary damages or for any judgment in excess of the policy limits.

ASSAULT AND BATTERY

■ Plaintiff claims the injury alleged in the underlying suit falls within the assault and battery exclusion of the insurance policy. The policy exclusion states, in pertinent part:

It is agreed that the insurance does not apply to "bodily injury," "personal injury" or "property damage" arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, including the failure to warn, train or supervise, . . . .

While the underlying suit is not an assault and battery case, Plaintiff asserts the underlying cause would not have been brought absent the assault and battery. Whether Plaintiff has a duty to defend depends upon whether the factual allegations of the underlying action fall within the assault and battery exclusions of the policy. As noted above, the focus is the origin of the damages and not the legal theories asserted. A duty to defend arises only if the suit alleges facts which potentially state claims for which there is coverage. *Paradigm Ins. Co. v. Texas Richmond Corp.*, 942 S.W.2d 645, 649 (Tex. App.—Houston [14th Dist.] 1997, writ denied).

Plaintiff cites *Garrison v. Fielding Reinsurance, Inc.*, 765 S.W.2d 536 (Tex. App.—Dallas 1989, writ denied) as instructive Texas case law on the duty to defend. In *Garrison*, the insured was sued for the shooting death of a patron which occurred in the insured's parking lot. *Id.* at 537. The insured was sued for negligence and the petition alleged that the insured knew or should have known that criminal activity had occurred in the vicinity. *Id.* The petition also alleged that the insured was negligent for failing to provide adequate security, failing to warn of the criminal activity, failing to inspect the premises, and failing to provide adequate security. *Id.* The insurer sought a declaratory judgment that it had no duty to defend or indemnify the insured based upon the assault and battery exclusion in the policy. *Id.* The trial court granted summary judgment in favor of the insurer and the insured appealed claiming that the underlying suit alleged negligence rather than assault and battery. *Id.* Relying on *Tarrant County Ice Sports, Inc. v. Equitable Gen. Life Ins. Co.*, 662 S.W.2d 129 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.), the court of appeals affirmed the trial court's decision that the insurer had no duty to defend. *Id.* at 538. The *Garrison* court, quoting *Tarrant County Ice Sports*, stated that

[a] plainer and more distinct assertion of assault and battery cannot be imagined. This was an assault and battery, pure and simple, and under the plain language of the policy endorsement was excluded from coverage under the policy.

*Id.*

The origin of the damages in the underlying suit is an assault and battery. Plaintiff contends that the Estate and the Dean heirs would never have brought a lawsuit against Sandstrom absent the assault and battery. Therefore, Plaintiff argues, under the plain language of the insurance policy, the Estate's and the Dean heirs' claims are excluded from coverage and the duty to defend.

Plaintiff also relies on the recent Fifth Circuit decision in *Canutillo v. National Union Fire Ins. Co.*, 99 F.3d 695 (5th Cir.1996) which held that an assault and battery exclusion bars claims not only for the assault and battery itself, but for any claims "arising out of" the assault and battery. In that case, the insurer sought declaratory judgment that it had no duty to defend the insured school district against claims arising from a teacher's alleged sexual abuse. In reversing the trial court's grant of summary judgment favoring the insured, the *Canutillo* court stated

[w]e find that Texas law is clear: where a claim against an insured would not exist "but for" conduct explicitly excluded by the policy, the dependent claims are also not covered under the policy, regardless of whether the insured against whom the derivative claims are directed actually engaged in the excluded acts.

*Id.* at 704. The complaint raised several causes of action, including that the defendants were negligent in their supervision of [the teacher], that they failed to protect the children from [the teacher's] actions, and intentional infliction of emotional distress. The court noted that the

negligence and failure to protect would not themselves have been actionable

where the only damages alleged stem from [the teacher's] sexual abuse. Furthermore, with respect to the claim for intentional infliction of. emotional distress, the plaintiffs [in the underlying suit] specifically alleged that "Defendants' conduct was the proximate cause of serious harm to the children as specified above in paragraph 25." Paragraph 25 states that "Defendants' actions and inactions have caused plaintiffs to be assaulted and harmed .... " Moreover, the complaint sets forth in graphic detail the sexual assaults committed by [the teacher].

*Id.* at 705. The court concluded that "while the teachers' failure to adequately respond to the children's complaints of abuse may have exacerbated the emotional injuries of the children, there clearly would have been no injury at all absent that abuse." *Id.*

## LIQUOR LIABILITY EXCLUSION

The policy at issue here also contains a liquor liability exclusion which states in pertinent part that the policy does not apply

(h) to bodily injury or property damage for which the insured or his indemnitee may be held liable

(1) as to such person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or

(2) if not so engaged, as an owner or lessor of premises used for such purposes, if such liability is imposed

(I) by, or because of the violation of, any statute, ordinance, or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or

(ii) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person; but part (ii) of this exclusion does not apply with respect to liability of the insured or

his indemnitee as owner or lessor described in (2) above.

The complaint alleges

Sandstrom was the license holder for The Waterhole under a permit duly issued by the Texas Alcoholic Beverage Commission. Defendant Sandstrom's conduct in this matter violated § 11.61(b)(14) of the Texas Alcoholic Beverage Code in that Defendant Sandstrom sold or delivered an alcoholic beverage to an intoxicated person on the date in question.

Because the complaint raises factual allegations that fall within the liquor liability exclusion set forth above, Plaintiff asserts it has no duty to defend Sandstrom.

Defendants contend that the assault and battery exclusion, as well as the liquor liability exclusion, do not apply to all of their factual allegations in the underlying suit. Specifically, they argue Plaintiff cannot meet the "but for" standard in regard to their claim of failure to render aid and medical assistance. Defendants contend that the employees of The Waterhole engaged in a separate and independent act of negligence by failing to render aid and medical assistance[1] to the deceased after he was injured. After the deceased was beaten, he collapsed to the floor where he remained for about fifty minutes before any emergency medical personnel were called.

Plaintiff urges that the failure to render aid claim, like the allegations complaining of the failure to provide security and failing to stop the altercation, arises from the perils excluded under the assault and battery and liquor liability exclusions. Plaintiff argues that the failure to render aid claim would not exist "but for" the assault and battery and intoxication of the deceased.

■ This Court agrees with Defendants that the failure to render aid cause of action, unlike the other claims in the underlying suit, is separate and independent from the acts excluded under the policy exceptions. Texas law supports the view that a business owner owes a duty to provide aid and assistance to his patrons, and this holds true without regard to the cause of the initial injury or the owner's liability for same. *See Applebaum v. Nemon*, 678 S.W.2d 533 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding day care center had duty to render reasonable assistance to child who became imperiled).

The Restatement (Second) of Torts § 314 provides

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

\* \* \* \* \* \*

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

Sandstrom, as a possessor of land held open to the public, comes under subsection three. Illustration five under § 314 demonstrates the duty and liability which can arise from the relationship which existed between Sandstrom and the deceased:

A, a patron attending a play in B's theatre, suffers a heart attack during the performance, and is disabled and unable to move. He asks that a doctor be called. B's employees do nothing to obtain medical assistance, or to remove A to a place where it can be obtained. As a result, A's illness is aggravated in a manner which reasonably prompt medical attention would have avoided. B is subject to liability to A for the aggravation of his illness.

---

1. For the purposes of this opinion, reference to the "failure to render aid" allegation should be understood as including the "failure to call for medical assistance" claim.

The instant case is analogous to this illustration. The deceased was a patron in Sandstrom's tavern when he was injured as a result of an assault and battery; although the deceased collapsed to the floor, the tavern employees did nothing to render aid or obtain medical assistance for him. Sandstrom's role as possessor of land implied a duty to render aid to an injured patron, regardless of the cause of the injury.

Plaintiff's position that the failure to render aid claim would not exist but for conduct excluded by the policy lends itself to a slippery slope, potentially cutting off any possibility that Plaintiff would have the duty to defend acts even remotely related to conduct excluded under the policy. There is a real danger the "but for" standard could be taken to extremes. For example, suppose while the deceased was incapacitated a fire had broken out in The Waterhole. If no one attempted to get the deceased out of the building or to otherwise render aid to him, would it be fair to say Plaintiff was relieved from the duty to defend because, but for the assault and battery and the selling or serving of alcohol, the deceased would have been able to escape, and thus, there would have been no underlying suit? As the above example demonstrates, it would be unreasonable to suggest that every cause of action based on the same factual circumstances "arises out of" those circumstances so that, but for the excluded conduct, there would be no underlying claim. While the Court finds the other claims in the underlying suit would not exist "but for" the excluded perils, the failure to render aid cause of action is separate and independent.

OCCURRENCE

Plaintiff argues that even if the failure to render aid claim is separate and independent from the assault and battery and liquor liability exclusions, the Estate and Dean heirs cannot prove that the alleged failure to render aid constituted an "occurrence," which is a prerequisite to coverage under the insurance policy. The policy

provides that Plaintiff will pay on behalf of the insured all sums which the insured becomes obligated to pay as damages resulting from bodily injury "caused by an occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury ... neither expected nor intended from the standpoint of the Insured ...."

Based on this, Plaintiff notes that the underlying complaint expressly alleges that the failure to render aid was a deliberate act: "Instead of calling for medical attention, the employees of The Waterhole decided to let Decedent lay on the floor, ostensibly to 'sleep off' the effects of his intoxication." Essentially, Plaintiff's argument is that since the employees of The Waterhole intentionally decided to let the deceased remain on the floor, and affirmatively decided to commit an act, there was no occurrence. Plaintiff also states "[t]hat the Waterhole did not intend the harm—Michael Kent Dean's death—is irrelevant. All that is relevant is that they decided to commit the act."

■ Courts determine whether certain conduct constitutes an "accident" for purposes of insurance coverage on a case-by-case basis. *Wessinger v. Fire Ins. Exchange*, 949 S.W.2d 834, 837 (Tex.App.—Dallas 1997, no writ). The general rule is that

> where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen, and unintended.

*Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Because the complaint here alleges the failure to render aid was voluntary and intentional, the inquiry becomes whether the injuries were a "natural result" of the act. *Wessinger*, 949 S.W.2d at 837. When a result is not the natural and probable consequence of an act or course of action, it is

produced by accidental means. *Id.citing Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555–56 (Tex.1976). The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. *Id.*

In *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819 (Tex.1997), the court was called upon to determine if intentional conduct which resulted in unintended injuries was an "accident," and thus an "occurrence" under the insurance policy at issue. *Id.* at 820. The court "reject[ed] Trinity's argument, . . . that if an actor intended to engage in the conduct that gave rise to the injury, there can be no accident." *Id.* at 828. Noting that "adopting Trinity's approach would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance," the court pointed to the following example

consider the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person. Though firing the gun was intentional, the harm can reasonably be characterized as an "accident."

*Id.* The court stated "[w]e think such a construction would also conflict with our holding that an 'accident' includes the 'negligent acts of the insured causing damage which is undesigned and unexpected.' " *Id.*

■ It is clear that the facts alleged in the instant case give rise to a situation in which, although an actor intended to engage in certain conduct, an accident occurred. Unlike the allegation in *Trinity,* the underlying complaint in the instant case alleges the failure to render aid was negligent, based on an omission. Denying coverage in the instant case simply because The Waterhole employees intentionally chose not to render aid would lead to an undesirable result. Michael Dean's death was not the natural and probable consequence of the employees' actions, and it could not have been reasonably anticipated by the insured under the circumstances. Thus, the failure to render aid

claim satisfied the definition of an occurrence under the policy language.

## CONCLUSION

■ The Court finds the Estate's and the heir's underlying claim for failure to render aid is separate and independent from the excluded conduct under the insurance policy. Plaintiff, therefore, is not relieved of its duty to defend Sandstrom on the cause of action for failure to render aid. Furthermore, under Texas law, an insurer is required to defend any case in which at least some of the allegations in the pleadings present a claim covered by the policy. *Western Heritage Ins. Co. v. Magic Years Learning Centers and Child Care, Inc.,* 45 F.3d 85, 88 (5th Cir.1995). If the underlying complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is factually within the policy's coverage. *Lafarge,* 61 F.3d at 393. Accordingly, for the above-mentioned reasons, the Court enters a declaratory judgment that Plaintiff has a duty to defend Sandstrom in the underlying lawsuit against Sandstrom in state court.

Due to the disposition of this case, it is unnecessary to address the other arguments raised in Plaintiff's Motion for Summary Judgment or the Defendant's Cross-Motion for Summary Judgment.