[No. 57181-8-I.   Division One.   May 21, 2007.]

AMERICAN BEST FOOD, INC., ET AL., *Appellants*, v. ALEA
LONDON, LTD., *Respondent*.

676

*Scott R. Sleight* (of *Ahlers & Cressman, PLLC*); *Shane A. Moloney*; *Scott Easter* and *Sandy Kang Mi Lee* (of *Montgomery Purdue Blankinship & Austin, PLLC*); and *Paul J. Miller*, for appellants.

*J.C. Ditzler, Molly K. Siebert*, and *Melissa O'Loughlin White* (of *Cozen O'Connor*), for respondent.

¶1 DWYER, J. — In this case, we resolve a dispute between the proprietor of a nightclub, Café Arizona,[1] and its liability insurer, Alea London, Ltd., concerning Alea's

---

[1] Café Arizona is operated by American Best Food, Inc., a Washington corporation. Hyun Heui Seo-Jeong wholly owns American Best Food. Seo-Jeong and her husband, Myung Chol Seo, operate American Best Food. Seo was managing the nightclub on the night Dorsey sustained his injuries. Café Arizona; American Best Food, Inc.; Seo-Jeong; and Seo were named as defendants in the Michael Dorsey litigation. We refer to Café Arizona; American Best Food, Inc.; Seo-Jeong; and Seo collectively as Café Arizona.

duty to defend and Café Arizona's right to indemnity. The dispute stems from a separate lawsuit brought by Michael Dorsey, who was repeatedly shot by George Antonio while both men were patrons of Café Arizona. Dorsey initiated a lawsuit that included allegations that the negligence of Café Arizona's employees, both before and after the shooting, was a proximate cause of Dorsey's injuries. Café Arizona notified Alea of the Dorsey lawsuit and asserted that the Alea policy both required Alea to defend Café Arizona against Dorsey's claims and provided Café Arizona the right to indemnity for sums that it "becomes legally obligated to pay [Dorsey] as damages because of 'bodily injury.'" Alea refused to defend Café Arizona against Dorsey's claims and denied that Café Arizona was entitled to indemnity for liability to Dorsey. Alea based its refusal on the liability insurance policy's exclusionary clause, which states: "This insurance does not apply to any claim arising out of . . . Assault and/or Battery."

¶2 Café Arizona then initiated this lawsuit against Alea, seeking monetary damages and declaratory relief, and asserting that Alea breached the insurance contract, acted in bad faith, violated the Washington Consumer Protection Act, chapter 19.86 RCW, and violated the Washington Insurance Code, Title 48 RCW, and insurance commissioner's regulations. Café Arizona and Alea each filed a motion for summary judgment. The trial court granted Alea's motion for summary judgment and dismissed Café Arizona's claims. In so ruling, the trial court relied on our holding in *McAllister v. Agora Syndicate, Inc.*, 103 Wn. App. 106, 11 P.3d 859 (2000), to conclude that the injuries Dorsey suffered as a result of allegedly negligent acts by employees of Café Arizona, occurring both before and after the shooting, necessarily "arise out of" the assault or battery.

¶3 We conclude that Café Arizona's potential liability for its employees' alleged negligence after Dorsey was shot did not necessarily "arise out of" an assault or battery upon Dorsey. Therefore, Alea had a duty to defend Café Arizona. In addition, unresolved issues of fact exist concerning both

Café Arizona's claimed right to indemnity and whether Alea acted in bad faith, rendering summary judgment inappropriate. Conversely, the trial court ruled correctly in dismissing the remaining claims based on the Consumer Protection Act, the Insurance Code, and insurance regulations. The trial court's ruling is thus affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings.

## FACTS

¶4 On January 19, 2003, in the parking lot of the Café Arizona, George Antonio repeatedly shot and severely injured Michael Dorsey. Dorsey subsequently brought a lawsuit against both Antonio and Café Arizona. Dorsey's original complaint alleged that, while Dorsey was at Café Arizona, Antonio started a confrontation with him. Antonio was escorted out of the club by security personnel but was subsequently allowed to re-enter, whereupon Antonio again confronted Dorsey. Security personnel again intervened and escorted both men out of the club. The men continued their verbal dispute outside the club, and the security guards began to surround Antonio. Antonio pulled out a gun and shot Dorsey several times. After Dorsey was shot, "[s]everal security guards carried [Dorsey] into the club, however, the club owner/manager ordered [the] guards to carry [Dorsey] back outside, where the guards dumped him back on the sidewalk."

¶5 The liability insurance policy Café Arizona purchased from Alea expressly provides coverage for sums that Café Arizona "becomes legally obligated to pay as damages because of 'bodily injury.'" The policy imposes upon Alea "the right and duty" to defend Café Arizona against any suit seeking such damages. However, the policy contains several exclusionary clauses, including the following:

> This insurance does not apply to any claim arising out of—
>
> A. Assault and/or Battery committed by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by the insured or any officer, agent,

servant or employee of the insured or by any other person; or

B. Any actual or alleged negligent act or omission in the:

1. Employment;
2. Investigation;
3. Supervision;
4. Reporting to the proper authorities or failure to so report; or
5. Retention;

of a person for whom any insured is or ever was legally responsible, which results in Assault and/or Battery; or

C. Any actual or alleged negligent act or omission in the prevention or suppression of any act of Assault and/or Battery.

¶6 Café Arizona notified Alea of the commencement of Dorsey's lawsuit, asserting both that Café Arizona had a right to indemnity for monetary damages it might incur as a result of Dorsey's claims and that Alea had a duty to defend Café Arizona against those claims. By letter, Alea responded that Dorsey's claims fell within the insurance policy's assault and battery exclusion and that, therefore, Café Arizona was not entitled to indemnity and Alea had no duty to defend Café Arizona in the Dorsey litigation.

¶7 Café Arizona's counsel wrote Alea disputing Alea's interpretation of the policy, noting that Dorsey's complaint contained factual allegations concerning the actions of Café Arizona's employees following the shooting and that Dorsey "appears to claim [that those actions] caused him further injuries" that would not necessarily be excluded by the assault and battery exclusion. In response, Alea's counsel stated that, based on *McAllister*, 103 Wn. App. 106, Dorsey's injuries from Café Arizona employees' allegedly negligent acts "arise out of" the assault or battery. Alea's counsel stated that, based on the policy's assault and battery exclusion, Alea had no duty to defend Café Arizona against Dorsey's claims and Café Arizona had no right to indemnity for its liability to Dorsey. In reply, counsel for Café Arizona wrote to counsel for Alea, stating, in part:

[B]ecause neither the Court of Appeals nor the Supreme Court have addressed the issue raised in the instant case, and because there is at least one case out there that does support my clients' position,[2] it is certainly conceivable that this claim would ultimately be found to be a covered occurrence, thereby entitling my clients to a defense and coverage.

Alea's response reaffirmed its position that it had no duty to defend Café Arizona against Dorsey's claims and that Café Arizona was not entitled to indemnity for its liability to Dorsey.

¶8 In May 2005, Café Arizona initiated this lawsuit against Alea. In July 2005, Dorsey served Café Arizona with a motion to amend his complaint.³ Dorsey's amended complaint states:

[S]ecurity guards carried the injured Michael Dorsey from the lobby of Café Arizona and dumped him on the sidewalk, exacerbating his injuries more, after Mr. Seo negligently ordered the guards to carry [Dorsey] back outside.

¶9 Café Arizona's counsel then engaged in further correspondence with Alea's counsel. On July 20, 2005, Café Arizona sent Alea a copy of Dorsey's amended complaint and asserted, based on the allegations set forth in the amended complaint, that Café Arizona had a right to coverage and that Alea had a duty to defend Café Arizona in the Dorsey litigation. On July 25, 2005, Café Arizona sent Alea portions of a report by Michael Comte, Dorsey's expert witness. Comte's report stated:

Dorsey was able to stagger into the alcove of the club. He said the owner of the club ordered security officers to carry him out and place him on the sidewalk, which they did. I was rather startled by Mr. Dorsey's description of the owner's behavior. I thought common sense would dictate you do not move a victim who has been shot.

---

² Counsel's reference was to *Western Heritage Insurance Co. v. Estate of Dean*, 55 F. Supp. 2d 646 (E.D. Tex. 1998) (claim for failure to render aid following an assault was not excluded by assault and battery exclusion).

³ Dorsey received leave to file his amended complaint on August 1, 2005.

The parties' correspondence did not produce a resolution of their dispute.

¶10 Café Arizona and Alea each filed a motion for summary judgment. The trial court granted Alea's motion for summary judgment and dismissed Café Arizona's claims.

## DISCUSSION

■ ¶11 An appellate court engages in de novo review of a trial court's ruling on summary judgment, considering all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 10, 25 P.3d 997 (2001).

### Duty To Defend

¶12 Café Arizona's initial contention is that Alea breached its duty to defend Café Arizona against Dorsey's claims. We agree.

■■ ¶13 The duty to defend is a primary benefit of an insurance contract. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 392, 823 P.2d 499 (1992)). An insurer's duty to defend against a claim is broader in scope and distinct from its duty to indemnify. *Allstate Ins. Co. v. Bowen*, 121 Wn. App. 879, 881, 91 P.3d 897 (2004) (citing *Truck Ins. Exch.*, 147 Wn.2d at 760). The insurer's duty to defend arises when an action is brought against its insured, and is based on the potential for the insured's liability. *Bowen*, 121 Wn. App. at 883 (citing *Truck Ins. Exch.*, 147 Wn.2d at 760). "The duty to defend 'arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Bowen*, 121 Wn. App. at 883 (internal quotation marks omitted) (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760). "[A]n insurer's duty to defend arises when any part of the claim is potentially or arguably within the scope of the policy's coverage, even if the allegations of the suit are false, fraudulent, or groundless." 14 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 200:12, at 200-35 to -36 (3d ed. 2005) (footnote

omitted). Any ambiguity in the complaint against the insured is liberally construed in favor of triggering the insurer's duty to defend. *Truck Ins. Exch.*, 147 Wn.2d at 760.

¶14 Once the duty to defend is triggered by a claim that potentially falls within the policy's basic coverage provisions, the insurer is relieved of that duty only if the claim is clearly excluded by an applicable exclusionary clause within the policy. *Truck Ins. Exch.*, 147 Wn.2d at 760; *Bowen*, 121 Wn. App. at 883-84.

> Although an insurer will be obligated to defend more cases than it will be required to indemnify under the "potentiality rule" because the mere possibility that the insurer will have to indemnify triggers the duty to defend, a duty to defend does not extend to circumstances in which there is no duty to indemnify as a matter of law. Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend.

14 Russ & Segalla, *supra*, § 200:12, at 200-37 (footnotes omitted). The insurer bears the burden of proving the applicability of such an exclusionary clause. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 674, 15 P.3d 115 (2000). Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination. *Truck Ins. Exch.*, 147 Wn.2d at 761. Instead,

> [i]f the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel. "When that course of action is taken, the insured receives the defense promised and, if coverage is found not to exist, the insurer will not be obligated to pay."

*Truck Ins. Exch.*, 147 Wn.2d at 761 (citation omitted) (quoting *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 563 n.3, 951 P.2d 1124 (1998)).

¶15 Our initial inquiry is whether Dorsey's complaint against Café Arizona, construed liberally, alleges facts

which could, if proved, impose liability upon Café Arizona for occurrences covered by the Alea policy. The liability insurance policy Café Arizona purchased from Alea expressly provides coverage for sums that Café Arizona "becomes legally obligated to pay as damages because of 'bodily injury' " that "is caused by an 'occurrence' that takes place in the 'coverage territory' " and that "occurs during the policy period." It is not disputed that Dorsey alleged, in both his original complaint and his amended complaint, that he suffered bodily injury as a result of an "occurrence." There is also no dispute that the alleged injury took place within the coverage territory and during the time the policy was in effect.[4]

¶16 Our next inquiry, therefore, is whether the policy contained a clause that clearly excluded from coverage Café Arizona's potential liability for the alleged injury to Dorsey. *Truck Ins. Exch.*, 147 Wn.2d at 760; *Bowen*, 121 Wn. App. at 883-84. Alea claims that it does. We disagree.

¶17 An appellate court engages in de novo review of a trial court's interpretation of an insurance policy, which is a question of law. *Stouffer & Knight v. Cont'l Cas. Co.*, 96 Wn. App. 741, 747-48, 982 P.2d 105 (1999). Language in an insurance policy that is susceptible to two different but reasonable interpretations is ambiguous and must be liberally construed in favor of the insured. *Teague Motor Co. v. Federated Serv. Ins. Co.*, 73 Wn. App. 479, 482, 869 P.2d 1130 (1994). Exclusionary clauses should be construed against the insurer with special strictness. *Tewell, Thorpe & Findlay, Inc. v. Cont'l Cas. Co.*, 64 Wn. App. 571, 575, 825 P.2d 724 (1992). However, a court may not give an insurance contract a strained or forced construction that would lead to an extension or restriction of the policy beyond what is fairly within its terms. *Tewell*, 64 Wn. App. at 576. In construing an insurance policy, the policy should be given a

---

[4] "Bodily injury" is defined to include "bodily injury . . . sustained by a person." "Occurrence" is defined as "an accident." "Coverage territory" is defined as "[t]he United States of America." The policy was in effect at the time Dorsey was allegedly injured.

fair, reasonable, and sensible construction, consistent with the way an average person purchasing insurance would understand the policy language. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

¶18 The applicable assault and battery exclusion provides:

> This insurance does not apply to any claim arising out of—
>
> A. Assault and/or Battery committed by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by the insured or any officer, agent, servant or employee of the insured or by any other person; or
>
> B. Any actual or alleged negligent act or omission in the:
>
> 1. Employment;
> 2. Investigation;
> 3. Supervision;
> 4. Reporting to the proper authorities or failure to so report; or
> 5. Retention;
>
> of a person for whom any insured is or ever was legally responsible, which results in Assault and/or Battery; or
>
> C. Any actual or alleged negligent act or omission in the prevention or suppression of any act of Assault and/or Battery.

¶19 As a preliminary matter, parts B and C of the applicable assault and battery exclusion clearly exclude the alleged preassault negligence of Café Arizona employees from coverage, insofar as such negligence resulted in or failed to prevent or suppress an assault or battery. However, parts B and C do not necessarily exclude the alleged postassault negligence of Café Arizona employees, because such postassault negligence is neither alleged to have resulted in, nor to have failed to prevent or suppress, an assault or battery.

¶20 Thus, the critical question is whether Café Arizona's potential liability to Dorsey for its employees' alleged postassault negligence clearly "arise[s] out of" an assault or

battery. Alea contends that it does, arguing that *McAllister*, 103 Wn. App. 106, is dispositive of this issue.

¶21 In *McAllister*, a nightclub patron was injured in an altercation with another patron. The injured patron brought a negligence claim against the nightclub owner, asserting that, before the assault, the nightclub's employees negligently failed to protect him. The applicable assault and battery exclusion in that case stated that " 'no coverage shall apply under this policy for any claim, demand or suit based on assault and/or battery.' " *McAllister*, 103 Wn. App. at 109. This court reasoned that McAllister's claim was "ultimately 'based on' assault and battery in the sense that without first establishing the underlying assault, negligence cannot be proved." *McAllister*, 103 Wn. App. at 111. Thus, we held that McAllister's negligence claims were excluded from coverage under the relevant policy. *McAllister*, 103 Wn. App. at 111.

¶22 However, *McAllister* involved only claims of pre-assault negligence. Thus, our analysis necessarily centered on prior cases where the assault or battery was alleged to have been the result of preassault negligence.[5] 103 Wn. App. at 110-11. By contrast, Dorsey alleged that he was injured by the behavior of Café Arizona employees after the shooting.

¶23 As noted by Café Arizona, courts in other jurisdictions have held that allegedly negligent acts occurring after

---

[5] These included *Terra Nova Insurance Co. v. North Carolina Ted, Inc.*, 715 F. Supp. 688 (E.D. Pa. 1989) (alleging that bar failed to take measures that might have prevented the alleged shooting assault upon bar patron by a fellow patron); *Mount Vernon Fire Insurance Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 668 N.E.2d 404, 645 N.Y.S.2d 433 (1996) (tenant assaulted by a third party sued landlord for negligent supervision, management, and control of the property); *U.S. Underwriters Insurance Co. v. Val-Blue Corp.*, 85 N.Y.2d 821, 647 N.E.2d 1342, 623 N.Y.S.2d 834 (1995) (off-duty police officer shot by a club security guard sued the nightclub, alleging negligent hiring, supervising, and training of the security guard); *Roloff v. Taste of Minnesota*, 488 N.W.2d 325 (Minn. Ct. App. 1992) (alleging negligence by festival sponsor for failing to provide adequate security, leading to an assault by festival attendee on fellow attendee); and *Taylor v. Duplechain*, 469 So. 2d 472 (La. Ct. App. 1985) (bartender allegedly acted negligently both by taking action that tended to cause the fight between two patrons and by not taking action to prevent or to end the fight).

an assault or battery do not necessarily "arise out of" the assault or battery. For example, in *Bucci v. Essex Insurance Co.*, 393 F.3d 285, 290-91 (1st Cir. 2005), the court analyzed an insurance policy exclusion for claims "arising out of assault and/or battery" and held that the policy did not necessarily exclude coverage for claims of postassault negligence, such as a failure to provide needed assistance to an injured patron. Similarly, in *United National Insurance Co. v. Penuche's, Inc.*, 128 F.3d 28 (1st Cir. 1997), a bar patron was first battered by another patron but was also subsequently injured by a bar employee who placed the patron in a "bear hug." The First Circuit held that the patron's injuries did not "arise out of" the initial attack:

> All of the damages in this tort action stem from a discrete intervening act of alleged negligence, and this claim cannot be said to arise out of earlier actions. [The bar employee] had a completely different objective from the brawling patron, and [the assaulted patron's] eventual injuries were not caused by the blows he received in the fight.

*Penuche's*, 128 F.3d at 32.

¶24 Additionally, in *Western Heritage Insurance Co. v. Estate of Dean*, 55 F. Supp. 2d 646, 650 (E.D. Tex. 1998), a case referenced by Café Arizona during the prelitigation discussions, an acutely intoxicated bar patron was battered by another patron and was then left by bar employees on the floor of the bar for 50 minutes before medical aid was summoned. The injured patron was dead by the time medics arrived. In analyzing the issues presented, the federal court recognized that "the origin of the damages in the underlying suit is an assault and battery" but noted:

> The deceased was a patron in [the] tavern when he was injured as a result of an assault and battery; although the deceased collapsed to the floor, the tavern employees did nothing to render aid or obtain medical assistance for him. [The tavern owner's] role . . . implied a duty to render aid to an injured patron, regardless of the cause of the injury.

*Dean*, 55 F. Supp. 2d at 651. These and other cases[6] recognize the logical distinction between allegations of preassault negligence and allegations of postassault negligence.

¶25 Dorsey alleged that employees of Café Arizona exacerbated his gunshot injuries. Dorsey's original complaint alleged that, after he had been shot, employees of Café Arizona "dumped him back on the sidewalk," and his amended complaint clarified that allegation. The alleged act of ordering employees to carry a gravely wounded Dorsey outside, and the alleged act of "dumping" him on the sidewalk, constitute "discrete intervening act[s] of alleged negligence" that Dorsey claims caused injury. *Penuche's*, 128 F.3d at 32. The harm these alleged acts occasioned is distinct from the prior harm caused by the assault or battery. Carrying and "dumping" a severely wounded patron posed a substantial risk of grave injury, regardless of the initial cause of the patron's physical distress. Unlike the situation in *McAllister*, negligence can here be proved "without first establishing the underlying assault." *McAllister*, 103 Wn. App. at 111. Thus, Dorsey's alleged subsequent injury at the hands of Café Arizona employees does not clearly "arise out of" the prior assault or battery.

¶26 The trial court's order granting summary judgment on this issue is reversed.

### Indemnity

¶27 Café Arizona next asserts that the evidence it proffered raised issues of material fact as to whether Alea breached the insurance contract by refusing to indemnify Café Arizona for liability in the Dorsey lawsuit, precluding summary judgment on this issue. We agree.

---

[6] *See, e.g., Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 491 (Tenn. Ct. App. 1999) (injury caused by an assault was divisible and separate from injury caused by postassault conduct; therefore assault and battery exclusion did not preclude coverage when there were allegations of injuries caused by insured's postassault conduct); *West v. City of Ville Platte*, 237 So. 2d 730, 733 (La. Ct. App. 1970) (claims for injuries from a beating arose from an assault and were excluded from coverage, but claims for injuries caused by failure to render aid or secure medical help did not arise from the assault and did not fall within a policy exclusion).

¶28 "The duty to indemnify hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). Where, as here, an insurer's duty to indemnify depends upon the resolution of factual issues relating to coverage, the duty arises only when the injured party in the underlying action against the insured prevails on facts that fall within the policy's coverage. *W. Nat'l Assurance Co. v. Hecker*, 43 Wn. App. 816, 821-22, 719 P.2d 954 (1986). Alea's duty to indemnify depends upon whether Café Arizona is found liable to Dorsey based on proof that postassault negligence caused Dorsey injury. The record on review is silent as to the outcome of the Dorsey litigation. Café Arizona's liability for any injury to Dorsey based on its preassault negligence is excluded from coverage by the policy's assault and battery provision. *McAllister*, 103 Wn. App. at 110-11. However, Café Arizona's liability for any injury to Dorsey based on its employees' negligence after Dorsey was shot is covered and not excluded by the insurance policy. Whether Café Arizona was found liable to Dorsey for bodily injuries proximately caused by the postassault negligence is a factual question that must be resolved on remand.

¶29 The trial court's summary judgment dismissal of Café Arizona's claim relating to Alea's refusal to indemnify Café Arizona is reversed.

### Bad Faith—Duty To Defend

¶30 Café Arizona also assigns error to the trial court's dismissal of its claim that Alea's refusal to provide a defense amounted to bad faith. Because the evidence submitted by Café Arizona raises issues of material fact on this question, summary judgment was improperly granted.

¶31 An insurer has a duty of good faith to its policyholder. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484, 78 P.3d 1274 (2003). The duty to act in good faith, and liability for acting in bad faith, arise from the fiduciary relationship between the insurer and insured. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 280, 961 P.2d

933 (1998). This fiduciary relationship implies a broad obligation to deal fairly and a responsibility to give equal consideration to the insured's interests. *Coventry*, 136 Wn.2d at 280. An insurer who unreasonably denies its defense obligation may be found to have acted in bad faith. *Wolf v. League Gen. Ins. Co.*, 85 Wn. App. 113, 122, 931 P.2d 184 (1997) (citing *Indus. Indem. Co. of Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 917, 792 P.2d 520 (1990)). However, bad faith will not be found where the failure to provide a defense is based upon a reasonable interpretation of the insurance policy. *Kirk*, 134 Wn.2d at 560. The question of whether an insurer unreasonably denies coverage is generally an issue of fact. *Tripp*, 144 Wn.2d at 23; *Van Noy v. State Farm Mut. Auto. Ins. Co.*, 142 Wn.2d 784, 796, 16 P.3d 574 (2001).

¶32 The trial court granted summary judgment dismissal of this claim based primarily on its belief that the *McAllister* decision compelled the conclusion that all of Dorsey's injuries "arise out of" the assault or battery and, therefore, that Alea had correctly determined that it had no duty to defend. However, Alea was incorrect in its determination that it had no duty to defend. Our inquiry, therefore, is whether the evidence and the reasonable inferences drawn therefrom, viewed in the light most favorable to Café Arizona, raise a genuine issue of material fact concerning whether Alea's refusal to defend was unreasonable. We conclude that they do.

¶33 The evidence on this issue includes the letters from Café Arizona to Alea asserting that *McAllister* did not apply to postassault negligence and citing authorities from other jurisdictions in support of its position, and Alea's responses thereto. These communications raise a factual issue as to whether Alea unreasonably denied its defense obligation. This evidence precludes summary judgment because it places the reasonableness of Alea's actions in question. The reasonableness of an insurer's denial of its defense obligation is the critical factual issue in determining whether such a denial was made in bad faith. *Wolf*, 85 Wn. App. at 122.

██ ¶34 The fact that Alea incorrectly determined that it had no duty to defend is evidence of bad faith. The proffered evidence raises doubts concerning the reasonableness of Alea's actions, particularly in light of the fact that Café Arizona called Alea's attention to authorities contrary to its position and given the requirement that an insurer give equal consideration to the interests of its insured. *Coventry*, 136 Wn.2d at 280. On the other hand, Alea's failure to provide a defense does not constitute bad faith if the trier of fact determines that Alea's decision was based upon a reasonable interpretation of the insurance policy. *Kirk*, 134 Wn.2d at 560. The determination of whether Alea's interpretation was reasonable is an unresolved question of fact. *Tripp*, 144 Wn.2d at 23.

¶35 The trial court's summary judgment dismissal of Café Arizona's bad faith claim relating to Alea's denial of a defense is reversed.

*Remedy for Bad Faith Refusal To Defend*

¶36 Café Arizona also asserts that, if Alea's refusal to provide a defense is found to constitute bad faith, then Alea should be estopped from asserting policy defenses to coverage of Café Arizona's claim, including any sums paid by Café Arizona to Dorsey in settlement of Dorsey's claims against Café Arizona.

██ ¶37 "Where an insurer acts in bad faith in failing to defend, . . . coverage by estoppel is one appropriate remedy." *Kirk*, 134 Wn.2d at 563 (citing *Safeco Ins. Co. of Am.*, 118 Wn.2d at 393). Although an insurer's denial of coverage based on a debatable question of coverage or a reasonable interpretation of the policy is not necessarily bad faith, *Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 361, 711 P.2d 1066 (1985), "when an insurer wrongfully refuses to defend, it has voluntarily forfeited its ability to protect itself against an unfavorable settlement, unless the settlement is the product of fraud or collusion." *Truck Ins. Exch.*, 147 Wn.2d at 765-66. "To hold otherwise would provide an incentive to an insurer to breach its policy." *Truck Ins. Exch.*, 147 Wn.2d at 766.

¶38 However, because we are remanding this cause for the trier of fact to determine whether the refusal to defend was made in bad faith, the question of the appropriate remedy for Alea's alleged bad faith is premature.

## Bad Faith Investigation

¶39 The trial court also granted summary judgment in favor of Alea concerning Café Arizona's allegations that Alea violated the Consumer Protection Act and insurance claims settlement regulations. We affirm these decisions by the trial court.

¶40 Café Arizona asserts that Alea did not respond to Café Arizona's July 20 and July 25, 2005 letters. Thus, Café Arizona asserts, Alea violated WAC 284-30-330(2), WAC 284-30-360(1), and WAC 284-30-360(3). Café Arizona also asserts that Alea's investigation of Café Arizona's claim violated WAC 284-30-330(3). In support of the contention that Alea failed to respond to Café Arizona's letters, Café Arizona cites only to the declarations of its counsel. However, neither declaration provides evidence of such a failure. Accordingly, Café Arizona produced insufficient evidence on this issue to raise a factual issue.

¶41 In addition, although Café Arizona asserts that Alea conducted an insufficient investigation, the allegations contained in Dorsey's complaint were neither ambiguous nor inadequate. The insurer must investigate the claim if coverage is not clear from the face of the complaint but may exist, or if the allegations are in conflict with facts known to or readily ascertainable by the insurer, or if the allegations are otherwise ambiguous or inadequate. *Truck Ins. Exch.*, 147 Wn.2d at 761. Such an investigation is directed to factual matters. *See Ins. Co. of N. Am. v. Ins. Co. of State of Pa.*, 17 Wn. App. 331, 334, 562 P.2d 1004 (1977).

¶42 However, it was Alea's legal opinion that its policy clearly excluded Café Arizona's liability to Dorsey that led to Alea's refusal to defend. Café Arizona has not shown that, given Alea's legal conclusion, further investigation of factual materials would have led Alea to a different under-

standing of the facts or a different result. Accordingly, Café Arizona's evidence does not give rise to an inference that Alea's investigation of the facts was insufficient, or that it violated insurance settlement regulations or Consumer Protection Act provisions. *Truck Ins. Exch.*, 147 Wn.2d at 761; *Ins. Co. of N. Am.*, 17 Wn. App. at 334.[7]

¶43 We affirm the trial court's dismissal of these claims.

## Attorney Fees

¶44 An insured that is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to recover an award of attorney fees to compensate it for the legal expenses incurred in vindicating the right to the claimed benefit. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991). Because Café Arizona was required to initiate this action in order to obtain the benefits to which it was entitled, it is entitled to an award of attorney fees in both this court and in the trial court.[8] As to fees on appeal, subject to compliance with RAP 18.1, a commissioner of this court will determine an appropriate award. As to fees incurred in the trial court, application should be made to that court upon remand.

## CONCLUSION

¶45 Affirmed in part, reversed in part, and remanded.

COLEMAN and ELLINGTON, JJ., concur.

Reconsideration denied July 18, 2007.

---

[7] As a result, Café Arizona's request for attorney fees on this basis was properly denied.

[8] Attorney fees incurred in prosecuting this action are to be distinguished from attorney fees incurred in defending the underlying Dorsey litigation, which are recoverable as damages in this action given our conclusion that Alea breached its duty to defend.